UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOE ANN HAMILTON, ET AL.,            )
                                     )
        Plaintiffs,                  )
                                     )         CIVIL ACTION NO.
VS.                                  )
                                     )         3:07-CV-1442-G
FIRST AMERICAN TITLE COMPANY,        )
                                     )         **ECF**
        Defendant.                   )

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, First American Title Insurance Company ("First American"), to dismiss the claim of the plaintiffs Joe Ann Hamilton, Earnest Hamilton, and Jacqueline Wilson (collectively, "the plaintiffs") under Rule 12(b)(6), F.R. Civ. P. For the reasons set forth below, the motion is granted.

### I. BACKGROUND

In Texas, mortgage lenders require borrowers to purchase title insurance policies as a condition of making a residential mortgage loan. *See* Plaintiff's Original Complaint ("Complaint") ¶ 6. Title insurance policies protect lenders by insuring the lenders against certain defects in title to property. *Id.* The policies remain in effect

until the loan is repaid. *Id.* Lenders also require borrowers to purchase title insurance policies when the homeowners refinance their homes. *See* Complaint ¶ 7. These policies are usually referred to as "reissue policies" because when a home is refinanced, the title to the property remains with the existing owner. *Id.*

Pursuant to the Texas Insurance Code, the Texas Department of Insurance ("TDI") fixes the premium rates to be charged by title insurance companies for policies issued in Texas. *See* Complaint ¶ 8. The rates required for an original issue title insurance policy are called "Basic Rates." *See* Complaint ¶ 9. TDI has also adopted mandatory rates for reissue lender title policies, which are calculated by using the Basic Rate less the "reissue discount." *See* Complaint ¶ 10. "Reissue premium charges are significantly lower than full basic title insurance rates, because the title to the property does not change hands when there is a refinancing." *Id.* The "reissue discount" rate decreases as time elapses from the date of the policy insuring the original mortgage, ranging from 40% to 15%. *See* Complaint ¶ 11.

Two of the plaintiffs, Joe Ann and Earnest Hamilton ("the Hamiltons"), obtained a mortgage loan with the required lender title insurance policy in April of 2004, and subsequently refinanced the loan on May 22, 2006. *See* Complaint ¶¶ 13-14. At the closing of the refinanced loan, the Hamiltons were required to purchase a lender title policy issued by the defendant, First American. *See* Complaint ¶ 14. According to the Texas Title Manual ("TTM"), Section III, R-8, the Hamiltons'

policy should have been reduced by 35% of the premium calculated at the Basic Rate, since the reissue mortgage policy occurred more than two but less than three years from the date of the mortgagee policy insuring the old mortgage.  *See* Complaint ¶ 15; *see also* TTM, Section III, R-8, *available at* www.tdi.state.tx.us/title/titlem3a.html#R-1.  However, the Hamiltons were not given this discount, and specifically allege they were overcharged $304.85.  *See* Complaint ¶ 15.

Jacqueline Wilson ("Wilson") obtained a mortgage loan in August of 1999, and later refinanced the loan on June 5, 2005.  *See* Complaint ¶¶ 16-17.  Again, at the closing of this refinanced loan, Wilson was required to purchase a lender title insurance policy issued by First American.  *See* Complaint ¶ 17.  According to the TTM, Section III, R-8, Wilson's policy should have been reduced by 15% of the premium calculated at the Basic Rate, since the reissue mortgage policy occurred less than seven years from the date of the mortgagee policy insuring the old mortgage.  Wilson, like the Hamiltons, did not receive this discount, and specifically alleges she was overcharged $101.10.  *See* Complaint ¶ 18.

The plaintiffs filed their original complaint on August 22, 2007, claiming that First American failed to give them the mandatory reissue discount as required by TDI in Section III, R-8 of the TTM.  *See* Complaint ¶ 12.  Plaintiffs further claim that First American thereafter split the resulting unearned amounts with First American's title agents, in violation of section 8(b) of the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C. § 2607(b). *See* Complaint ¶¶ 46-49. The plaintiffs also allege unjust enrichment and money had and received.

First American moves to dismiss count three of the complaint, which alleges violations of RESPA Section 8(b), under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim on which relief may be granted. First American alleges (1) the plaintiffs' suit is barred by 12 U.S.C. § 2614, the one-year statute of limitations; and (2) the defendant did not violate RESPA section 8(b).

## II. ANALYSIS

### A. 12(b)(6) Standard

"To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, 127 S.Ct. at 1964-65 (citations, quotations marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal*, 495 F.3d at 205

(internal quotation marks omitted) (quoting *Bell Atlantic*, 127 S.Ct. at 1965). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted) (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

B.  Statute of Limitations Under RESPA

The plaintiffs' RESPA claim falls under Section 8(b), which is codified at 12 U.S.C. § 2607(b). RESPA has its own statute of limitations provision, 12 U.S.C. § 2614, which states in relevant part:

> "Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court . . . for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation, except that actions brought by the Secretary, the Attorney General of any State, or the insurance commissioner of any State may be brought within 3 years from the date of the occurrence of the violation."

The Fifth Circuit has interpreted "the date of the occurrence of the violation," for purposes of section 2614, as the time of closing, in essence, "when the plaintiffs paid for the insurance, because that is when the agents earned the allegedly prohibited 'thing of value.'" *Snow v. First American Title Insurance Company*, 332 F.3d 356, 359 (5th Cir. 2003). Here, the Hamiltons closed their refinancing on May 22, 2006, and

Wilson closed her refinancing on June 5, 2005.  *See* Complaint ¶¶ 14, 17.  The plaintiffs did not file suit until August 22, 2007, which is beyond the one year period allowed by § 2614.

The plaintiffs urge the court to allow equitable tolling of the statute of limitations.  The Fifth Circuit has expressly declined to address whether § 2614 is subject to equitable tolling.[1]  *Snow*, 332 F.3d at 361 n.7.  Other circuits are divided on this issue.[2]  The Supreme Court has stated that limitations periods are "customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute."  *Young v. United States*, 535 U.S. 43, 49 (2002) (internal

---

[1] As an initial matter, the Fifth Circuit distinguishes between equitable tolling and equitable estoppel.  "[E]quitable tolling focuses on the plaintiff's excusable ignorance of the facts underlying the suit, while equitable estoppel focuses on the defendant's misrepresentation or concealment of the facts underlying the suit." *McAllister v. Federal Deposit Insurance Corporation*, 87 F.3d 762, 767 n.4 (5th Cir. 1996)(citing *Rhodes v. Guiberson Oil Tools Division*, 927 F.2d 876, 878 (5th Cir. 1991)).

[2] The D.C. Circuit held, in *Hardin v. City Title and Escrow Company*, 797 F.2d 1037, 1041 (D.C. Cir. 1986), that the statute of limitations in RESPA, 12 U.S.C. § 2614, is jurisdictional and therefore not subject to equitable tolling.  Because the time limitation is included in the same section that created federal and state court jurisdiction, the court reasoned this evidenced Congressional intent that the limitation be jurisdictional and not subject to equitable tolling.  *Id.* at 1039-41.  But see, *e.g.*, *Ramadan v. Chase Manhattan Corporation*, 156 F.3d 499, 505 (3d Cir. 1998) (holding the statute of limitations contained in the Truth In Lending Act ("TILA"), 15 U.S.C. § 1640(e), is not jurisdictional and therefore subject to equitable tolling, even though the limitation is included within the same statutory section containing the Act's jurisdictional grant); see also *Lawyers Title Insurance Corporation v. Dearborn Title Corporation*, 118 F.3d 1157, 1166-67 (7th Cir. 1997) (declining to follow *Hardin* and holding the statute of limitations under RESPA may be subject to equitable tolling).

citations omitted). "Congress must be presumed to draft limitations periods in light of this background principle." *Id.* at 49-50. Therefore, in deciding whether to toll a statute of limitations, courts should look at whether Congressional intent would be frustrated should the limitations period be tolled.

In *Snow*, the court emphasized the fact that § 2614 "actually contains three separate statutes of limitations." *Snow*, 332 F.2d at 359 (first, "[t]he Secretary of Housing and Urban Development, state attorneys general, and state insurance commissioners may sue within three years of any violation of RESPA." Second, "[p]rivate plaintiffs . . . have a three-year limitations period for suits alleging a violation of § 2605." And third, "[o]nly for private plaintiffs suing under §§ 2607 and 2608 did Congress impose a one-year limitations period"). The court reasoned that "[b]y extending indefinitely the limitations period for private plaintiffs suing under § 2607, . . . [it] would create[ ] a limitations period . . . longer than Congress could have contemplated" and would "negate Congress's decision to impose three different limitation periods in § 2614." *Snow*, 332 F.2d at 359 (internal citations omitted).

A court in the Eastern District of Texas recently rejected a RESPA plaintiff's equitable tolling argument. *Poe v. First Franklin Financial Corporation*, 2007 WL 2901126, *3 (E.D. Tex. 2007) (granting defendant-lender's motion for summary judgment). In so holding, the court stated that "equitable tolling is permissible only

under 'rare and exceptional' circumstances." *Id.* (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)). Furthermore, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Id.* (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). Finally, the court stated that "[i]t is well-settled that equitable tolling is not warranted merely because a petitioner is not well-versed in the law." *Id.* (citing *Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000) ("mere ignorance of the law or of statute of limitations is insufficient to warrant tolling.")).

Under the circumstances in this case, however, it is not necessary to decide whether RESPA's statute of limitations may be tolled, because even if it may, the plaintiffs have not set forth facts showing their entitlement to a tolling of the limitations period. While First American's conduct is questionable, the plaintiffs have not shown valid justification for their delay in filing suit that would warrant tolling of the RESPA statute of limitations, especially under the Fifth Circuit's "rare and exceptional circumstances" requirement. See *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). The Texas Title Manual is available online, which the plaintiffs could have easily consulted within a year of their respective closings. Had they consulted the manual, they would have learned they had not been given the mandatory discount and that the split between First American

and its agents was also mandatory. Plaintiffs allege that they did not discover the alleged violation until assisted by an attorney. However, this assertion, by itself, does not entitle them to equitable tolling. See *Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir.) ("mere ignorance of the law or of statutes of limitations is insufficient to warrant tolling . . ."), *cert. denied*, 531 U.S. 1035 (2000).

### III. CONCLUSION

For the reasons stated above, the motion of the defendant First American Title Insurance Company to dismiss the RESPA claim of the plaintiffs under Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED**.

**SO ORDERED**.

February 25, 2008.

_____
**A. JOE FISH**
**Senior United States District Judge**