UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE ANN HAMILTON, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:07-CV-1442-G |
| FIRST AMERICAN TITLE COMPANY, | ) | |
| | ) | **ECF** |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion of the defendant, First American Insurance Title Company ("First American" or "the defendant"), to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the motion is denied.

I. BACKGROUND

This is the second motion to dismiss the defendant has filed. In its order ruling on the first motion to dismiss, *see* Memorandum Opinion and Order dated February 25, 2008, the court recited the following facts:

In Texas, mortgage lenders require borrowers to purchase title insurance policies as a condition of making a residential mortgage loan. *See* Plaintiff's Original Complaint ("Complaint") ¶ 6. Title insurance policies protect lenders by insuring the lenders against certain defects in title to property. *Id.* The policies remain in effect until the loan is repaid. *Id.* Lenders also require borrowers to purchase title insurance policies when the homeowners refinance their homes. *See* Complaint ¶ 7. These policies are usually referred to as "reissue policies" because when a home is refinanced, the title to the property remains with the existing owner. *Id.*

Pursuant to the Texas Insurance Code, the Texas Department of Insurance ("TDI") fixes the premium rates to be charged by title insurance companies for policies issued in Texas. *See* Complaint ¶ 8. The rates required for an original issue title insurance policy are called "Basic Rates." *See* Complaint ¶ 9. TDI has also adopted mandatory rates for reissue lender title policies, which are calculated by using the Basic Rate less the "reissue discount." *See* Complaint ¶ 10. "Reissue premium charges are significantly lower than full basic title insurance rates, because the title to the property does not change hands when there is a refinancing." *Id.* The "reissue discount" rate decreases as time elapses from the date of the policy insuring the original mortgage, ranging from 40% to 15%. *See* Complaint ¶ 11.

Two of the plaintiffs, Joe Ann and Earnest Hamilton ("the Hamiltons"), obtained a mortgage loan with the required lender title insurance policy in April of

2004, and subsequently refinanced the loan on May 22, 2006. *See* Complaint ¶¶ 13-14. At the closing of the refinanced loan, the Hamiltons were required to purchase a lender title policy issued by the defendant, First American. *See* Complaint ¶ 14. According to the Texas Title Manual ("TTM"), Section III, R-8, the Hamiltons' policy should have been reduced by 35% of the premium calculated at the Basic Rate, since the reissue mortgage policy occurred more than two but less than three years from the date of the mortgagee policy insuring the old mortgage. *See* Complaint ¶ 15; *see also* TTM, Section III, R-8, *available at* www.tdi.state.tx.us/title/titlem3a.html#R-1. However, the Hamiltons were not given this discount, and specifically allege they were overcharged $304.85. *See* Complaint ¶ 15.

Jacqueline Wilson ("Wilson") obtained a mortgage loan in August of 1999, and later refinanced the loan on June 5, 2005. *See* Complaint ¶¶ 16-17. Again, at the closing of this refinanced loan, Wilson was required to purchase a lender title insurance policy issued by First American. *See* Complaint ¶ 17. According to the TTM, Section III, R-8, Wilson's policy should have been reduced by 15% of the premium calculated at the Basic Rate, since the reissue mortgage policy occurred less than seven years from the date of the mortgagee policy insuring the old mortgage. Wilson, like the Hamiltons, did not receive this discount, and specifically alleges she was overcharged $101.10. *See* Complaint ¶ 18.

The plaintiffs filed their original complaint on August 22, 2007, claiming that First American failed to give them the mandatory reissue discount as required by TDI in Section III, R-8 of the TTM. *See* Complaint ¶ 12. Plaintiffs further claim that First American thereafter split the resulting unearned amounts with First American's title agents, in violation of section 8(b) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(b). *See* Complaint ¶¶ 46-49.

In First American's first motion to dismiss, it argued that the plaintiffs had failed to state a claim upon which relief could be granted because the defendants had not violated RESPA. *See* Brief in Support of Defendant's Motion to Dismiss ("Motion to Dismiss") at 1. The court did not reach that issue because it held that the RESPA claims were barred by the statute of limitations. Since the court's ruling on the first motion to dismiss, three individuals have filed a motion to intervene, which the court granted. One of these individuals, Kimberly Williams-Thompson ("Williams-Thompson"), asserts a RESPA claim which the court has already ruled is not time-barred. *See* Memorandum Opinion and Order dated August 15, 2008 at 2. Thus, there is still one RESPA claim remaining. In this second motion to dismiss, First American seeks dismissal of this remaining RESPA claim and also seeks confirmation from the court that all other RESPA claims are time barred.

## II. ANALYSIS

As a preliminary matter, the court reiterates its prior holding that all the RESPA claims in this lawsuit are barred by the one year statute of limitations, except for the claim brought by Williams-Thompson. First American points out that the plaintiffs' amended complaint, filed on August 20, 2008, does not expressly limit the RESPA claim to Williams-Thompson. Motion to Dismiss at 2. It is unclear whether the plaintiffs intended to assert the RESPA claim on behalf of any plaintiff other than Williams-Thompson. To the extent they have tried to do so, however, the court will not allow it. As the court has already held, the other plaintiffs are time-barred from asserting a RESPA claim. The court has not yet decided, however, whether Williams-Thompson's RESPA claim (the only one remaining) should be dismissed under Rule 12(b)(6).

### A. The Rule 12(b)(6) Standard

"To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007)), *cert. denied*, ___ U.S. ___, 128 S.Ct. 1230 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65 (citations, quotations marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 127 S.Ct. at 1965). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted) (quoting *Martin K. Eby Construction Company v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004)).

B. RESPA § 8(b)

First American argues that even if all the facts the plaintiffs assert are true, they are not entitled to relief. The defendant contends that the plaintiffs are seeking relief for an overcharge but that overcharges are not actionable under RESPA § 8(b). Motion to Dismiss at 5 (citing *Friedman v. Market Street Mortgage Corporation*, 520 F.3d 1289, 1296 (11th Cir. 2008); *Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384, 388 (3rd Cir. 2005); *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 56 (2nd Cir. 2004); *Haug v. Bank of America*, 317 F.2d 832, 837 (8th Cir. 2003); *Krzalic v. Republic Title Company*, 314 F.3d 875, 881-82 (7th Cir. 2002), *cert. denied*, 539 U.S. 958 (2003); *Boulware v. Crossland Mortgage Corporation*, 291 F.3d 261, 265 (4th Cir. 2002)). These cases hold that § 8(b) of RESPA "is not a price control provision." *Friedman*, 520 F.3d at 1296. They conclude, as a result, that § 8(b) provides no relief

to plaintiffs who claim that their title company charged too much for the services rendered. These courts have reached this conclusion based on the language of § 8(b), which states, "No person shall give and no person shall accept . . . any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan *other than for services actually performed*." 12 U.S.C. § 2607(b) (emphasis added). These courts all agree that plaintiffs such as Williams-Thompson cannot recover for an overcharge of services actually performed. Although the Fifth Circuit has not yet addressed this issue, the court finds the cases cited above persuasive and agrees that RESPA § 8(b) was not intended to be a price control provision.

Here, however, the plaintiffs have pled that the defendant charged a fee it did not earn, and then split that fee with the title agent, who had performed no services in connection with that fee. Plaintiffs' Original Complaint at 6. According to a recent decision in the Northern District of Texas, RESPA § 8(b) provides relief in such a situation. *Mims v. Stewart Title Guaranty Company*, 521 F. Supp. 2d 568, 572 (N.D. Tex. 2007). In *Mims*, the court was faced with facts nearly identical to those at issue here. The plaintiffs in *Mims* filed suit against their title insurance company after discovering that the insurer had failed to give them the mandatory reissue discount and split the resulting profits with the title agents. *Id.* at 570. The defendant filed a motion to dismiss, arguing that RESPA did not provide relief for such a claim. *Id.* at

571-72. The court disagreed. It conceded that "excessive premiums, standing alone, do not violate section 8(b)." *Id.* at 572. It also held that merely because the insurance company "paid a portion of the excessive premiums to title agents does not transform the overcharges into violations." *Id.* Nevertheless, if the portion accepted by the title agents was "other than 'for services actually performed,' such that the portion would be in the nature of a kickback or referral fee," § 8(b) does provide relief. *Id.* In other words, so long as the court can determine that the title agent was receiving the money as a kickback or referral and not as compensation for any services actually performed, RESPA applies.

When the holding of *Mims* is applied to this case, if the defendant automatically gave a portion of an unearned fee to the title agent, who had performed no services in connection with that fee, the plaintiffs have stated a claim upon which relief can be granted. The plaintiffs have pled exactly these facts. Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss ("Response") at 4. Nevertheless, the defendant argues that *Mims*' holding does not apply to this case for three reasons.

1. *Defendant's First Argument: Texas Law Requires a Split of Fees between Title Insurance Companies and Title Agents*

First, the defendant argues that the court in *Mims* did not take into account "the fact that state law requires First American (and other underwriters) to split title premiums with its agents." Motion to Dismiss at 14. It is true that Texas does require a split of premiums between title insurance companies and their agents.

Texas Title Insurance 2d Appendix 1A, Section IV P-23. The plaintiffs correctly point out, however, that requiring a split of the premiums does not equate to requiring the split of an unearned charge. Response at 22. As the plaintiffs put it, the defendant has cited no authority "to support its assertion that the Texas Legislature or Texas Department of Insurance intended -- much less mandated -- the split of *a fee that is itself expressly prohibited by Federal and Texas law*." *Id.* (emphasis in original). The court agrees. Texas's rule that title insurance companies must split premiums with their agents cannot protect the defendant from liability for splitting a fee he received in violation of Texas and federal law. RESPA specifically forbids splitting "any charge made or received for the rendering of a real estate settlement service . . . other than for services actually performed." 12 U.S.C. § 2607(c). "One basic principle of statutory construction is that where two statutes appear to conflict, the statute addressing the relevant matter in more specific terms governs." *Goswami v. American Collections Enterprise, Inc.*, 395 F.3d 225, 227 n.4 (5th Cir. 2004), *cert. denied*, 546 U.S. 811 (2005). In light of this principle, the Texas law requiring Texas title insurance companies to split premiums with their agents does not protect defendants who engage in the behavior prohibited by § 8(b).

2. *Defendant's Second Argument: The Application of RESPA § 8(c)*

Next, the defendant argues that the court should not follow the reasoning in *Mims* because the court in *Mims* incorrectly applied § 8(c) of RESPA. Motion to

Dismiss at 14. Section 8(c) states that "Nothing in this section shall be construed as prohibiting (1) the payment of a fee . . . by a title company to its duly appointed agent for services actually performed in the issuance of a policy of title insurance." The defendant argues that this language amounts to an "exemption for splits between a title company and its agents." Motion to Dismiss at 12. Section 8(c), however, includes the same language included in § 8(b): "for services actually performed." Section 8(b) expressly forbids a title insurance company from splitting a fee with its agent if the agent has performed no services in connection with that fee. Section 8(c) merely reiterates that, so long as the title agent actually performs services, the title insurance company is free to split its fees with the title agent. The defendant's argument otherwise is unavailing.

3. *Defendant's Third Argument: The Definition of "Services Actually Performed"*

Finally, the defendant argues that *Mims* incorrectly defines the phrase "services actually performed." Motion to Dismiss at 14. In *Mims*, the court addressed § 8(c) by looking at the Fifth Circuit's interpretation of "services actually performed." *Mims*, 521 F. Supp. 2d at 573. According to the test laid out by the Fifth Circuit, a payment is for services actually performed if the title agents "provided goods or services in connection with the particular transaction . . . and compensation is reasonably related to the value of those goods or services." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 741 (5th Cir. 2003). The court in *Mims* reasoned

that, if the title agents were, as the plaintiffs alleged, being paid portions of excess premiums, "it is certainly plausible that the portions were not reasonably related to the value of the agents' issuing services." *Mims*, 521 F. Supp. 2d at 573.

The defendant argues that this conclusion is erroneous because the fee paid by a consumer such as Williams-Thompson *must* be reasonably related to the value of the agents' services. It reasons that consumers pay the basic rate for a lender's policy of title insurance, which is fixed by the TDI. Motion to Dismiss at 15. Any rate fixed by the TDI, the defendant argues, "must, by definition, be reasonably related to the value of a lender's policy of title insurance, or the TDI would not have approved that rate." *Id.* The court disagrees. Although Williams-Thompson does allege she paid the basic rate as fixed by the TDI, she also alleges that she did not receive the reissue discount mandated by the TDI. Thus, the rate she paid is not *per se* reasonably related to the value of the agents' services.

In short, the court is persuaded by the reasoning in *Mims* and finds the defendant's attempt to distinguish it unconvincing. The plaintiffs have pled that the defendant split a fee with its agent that was not reasonably related to any services it performs. This court agrees with the holding in *Mims* that if the fees the title agents received were in violation of TDI's mandated reissue discounts, "it is certainly plausible" that the fees were not reasonably related to any services performed. *Mims*, 521 F. Supp. 2d at 573.

In addition, *Mims* is not alone. Two other district courts in the Northern District of Texas have addressed almost the exact fact pattern at issue here. *Patino v. Lawyers Title Insurance Corporation*, 2007 WL 4687748 (N.D. Tex. Jan 11, 2007); *Hancock v. Chicago Title Insurance Company*, 2007 WL 4344620 (N.D. Tex. Sept. 23, 2008). In both *Patino* and *Hancock*, the plaintiffs asserted claims against title insurance companies, contending that those companies failed to give the plaintiffs the reissue discount to which they were entitled, and had passed on a portion of the unearned fee to the title agent. *Patino*, 2007 WL 4687748, at *1-2; *Hancock*, 2008 U.S. Dist. LEXIS 8621, at *1-4. The defendants in each case brought motions to dismiss, arguing that the plaintiffs had failed to state a claim upon which relief could be granted. Both courts addressed the numerous cases discussing that RESPA does not allow plaintiffs to recover for "overcharges." *Patino*, 2007 WL 4687748, at *3-5, *Hancock*, 2008 U.S. Dist. LEXIS 8621, at *9-17. Ultimately, both courts denied the motions to dismiss. *Patino*, 2007 WL 4687748, at *7, *Hancock*, 2008 U.S. Dist. LEXIS 8621, at *17.

There is only one final issue for the court to address: recently, the Eleventh Circuit issued three cases disagreeing with *Mims*, *Hancock*, and *Patino*. Motion to Dismiss at 5. The defendant argues the court should follow these cases and dismiss the plaintiffs' claim. On July 3, 2008, the Eleventh Circuit issued three *per curiam* opinions. *Morrissette v. Novastar Home Mortgage, Inc.*, 2008 WL 2610550 (11th Cir.

July 3, 2008); *Williams v. Countrywide Home Loans, Inc.*, 2008 WL 2609339 (11th Cir. July 3, 2008); *Moody v. Commonwealth Land Title Insurance Company*, 2008 WL 2610765. All three of these cases hold that, because RESPA § 8(b) is not a price control provision, plaintiffs who plead that their title insurance company violated § 8(b) by charging more than Alabama law allowed, do not state a claim upon which relief can be granted. *Id.*

These opinions do appear to contradict *Mims*, *Hancock*, and *Patino*. All of them rely, however, on reasoning that the Fifth Circuit has explicitly disagreed with. All three Eleventh Circuit cases rely on *Friedman*, which holds that a plaintiff cannot recover under § 8(b) from a title insurance company who charges a fee that is "excessive in relation to services or goods actually rendered." *Friedman*, 520 F.3d at 1296. This holding stems from the court's conclusion that § 8(b) "is not a price control provision." *Id.* The Fifth Circuit has not yet weighed in on whether § 8(b) is a price control provision. Even if it does someday hold that § 8(b) was not designed to control prices, such a holding will not necessarily lead that court to conclude that § 8(b) is inapplicable merely because the defendant has performed some service. Indeed, the Fifth Circuit has already held that it does not adhere to that principle. Instead, it uses the reasonable relationship test. *O'Sullivan*, 319 F.3d at 740-41. According to this test, if the services rendered by a title insurance company are not

"reasonably related to the undisputed services" provided, the defendant may be liable under § 8(b). *Id.* at 741.

Thus, the recent Eleventh Circuit opinions the defendant relies on are not only not controlling, they directly contradict Fifth Circuit law. In applying the reasonable relationship test, the court concludes that if, as Williams-Thompson pleads, the defendant charged a fee in violation of state law, it is "certainly plausible" that such a fee was not reasonably related to the services provided. *Mims*, 521 F. Supp. 2d at 573. As the plaintiffs put it, Texas law required the defendant and its agent to charge Williams-Thompson a specific amount of money for its services. Response at 4. Any money received in excess of that amount cannot possibly be reasonably related to services actually rendered. *Id.* In other words, the court finds that the reasonable relationship test is easily passed here. The Eleventh Circuit cases the defendant refers to are neither controlling, nor convincing, and do not affect the court's holding.

## III. CONCLUSION

For the reasons discussed above, the defendant's motion to dismiss pursuant to Rule 12(b)(6) is **DENIED**.

**SO ORDERED**.

April 21, 2009.

A. Joe Fish

**A. JOE FISH**
**Senior United States District Judge**